Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6990 | **DATE** | February 20, 2004 |
| **CASE TITLE** | *American National Bank v. Alps Electric* | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Alps and Seishin's motion for summary judgment as to its cross-claims against West is granted. Judgment is entered against West in the amount of $1,207,934.01 plus prejudgment interest. As this disposes of all claims as to all parties, the clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | FEB 20 2004 date docketed | |
| | Notified counsel by telephone. | | | 164 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| ✓ | Copy to judge/magistrate judge. | | | |
| | RTS/c | courtroom deputy's initials | FEB 20 AH 8:10 date mailed notice | |
| | | | Date/time received in central Clerk's Office 03-03-14 mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO,<br>Plaintiff,<br>v.<br>ALPS ELECTRIC CO., LTD., NIT HOLDINGS LIMITED, MATHIAS BURLET, and DONALD WEST,<br>Defendants. | No. 99 C 6990 |

## MEMORANDUM AND ORDER

Alps Electric and Seishin's cross-claims against Donald West are the only pending claims left in this convoluted interpleader action. Alps and Seishin have filed an unopposed motion for summary judgment as to those claims. For the following reasons, the motion is granted.

I. **Background**

　A. **Local Rules**

Under the local rules, a party seeking summary judgment must file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Local Rule 56.1(a)(3). "All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b). Here, West has failed to respond to Alps and Seishin's motion for summary judgment. Accordingly, all properly supported facts in Alps and Seishin's Rule 56 statements are deemed admitted for the purposes of the pending motion for summary judgment.

## B. Facts

Alps is a publicly traded company that produces and sells electronic components throughout the world. Early in 1999, Yoshiaki Ichiyama (Alps' director of finance) and Hiroshi Aihara (the manager of Alps' Finance Department) retained Toshimasa Yamada as a consultant to pursue potential investments for Alps in bond trading programs in Europe. In connection with his consulting work, Yamada (an obviously very trusting person) met with Al Grillo, who told him about Perry Hammer, a bond trader who could provide a 200% profit per month.

In July of 1999, Yamada met twice with Hammer and Donald West, an attorney. Hammer and West told Yamada that they represented Northgold International Trust, a company involved in a bond trading program in Europe. They told Yamada that Northgold could buy bonds with a fixed interest rate from top banks in Europe at a large discount and then immediately resell them for profit. They also told him that a special condition of the program was that Northgold had to give 30% of its profits to either a charity or a public works project. Finally, they told him that Alps could participate in this bond trading program by depositing funds in an account in Alps's name and then having the bank issue a "bank guarantee," which Northgold would use to obtain a line of credit to conduct the trading program. A key part of the program was that Alps' funds would not need to leave Alps' account at the Anglo Irish Bank.

Yamada signed a joint venture agreement with Northgold Trust on behalf of Alps so that Alps could participate in the program. West subsequently told Yamada that Alps needed to transfer funds from its Anglo Irish Bank account to a client fiduciary account in West's name at the American National Bank and Trust Company in Chicago. West assured Yamada that he would hold the funds as a fiduciary of Alps and Northgold Trust in a segregated account. He

also told Yamada that only attorneys, such as he, could open such an account, and that such an account imposed very strict obligations, including personal liability for misuse of the funds.

Based on these representations, Yamada agreed to transfer $12 million from Alps's Anglo-Irish Bank account to an account in the name of "Donald W. West CFA Northgold" at the American National Bank. As a precaution, Yamada wrote to West and asked him to agree to return the money to Alps's account at the Anglo-Irish Bank if trading did not commence within seven days of the transfer. West wrote back and agreed to do this. Alps subsequently needed the money back and thus had one of its shareholders (Seishin, formerly known as Seto Industry) deposit money into its account with the understanding that Seishin would be the beneficiary of any return on that investment. Thus, $12M belonging to Seishin was transferred by Alps to the American National Bank account.

The next morning, West changed the client name on the American National Bank account from Northgold Trust to NIT Holdings and began to make wire transfers from the account to entities including the West Family trust and West's creditors. The timing and nature of the transfers made American National Bank suspicious and after an investigation, it froze the account. At about the same time, West misled Yamada by telling him that the first trade had taken place and that Alps would be receiving a $308,000 profit shortly. West intended to send Alps $308,000 of its own money to make it believe that the trading program was legitimate and to give West time to abscond with the remaining money in the account.

West failed to give Alps the purported "profit" so Yamada asked West to return the $12M. Unsurprisingly, West did not return the money. In the meantime, based on American National Bank's investigation and its belief that something suspicious was going on with the account, American National Bank filed an interpleader action with this court. Eventually, West

told American National Bank to return the money. It did not do so as the money had, by that time, already been deposited with the court. Pursuant to the court's order resolving the parties' cross-motions for summary judgment regarding entitlement to the money in the American National Bank, Seishin received $10,792,063.99.

Alps and Seishin seek a judgment against West for $1,207,934.01 (the difference between the $12M it put in the American National Bank account and the amount it got back) plus prejudgment interest. They contend that West defrauded them and breached his contractual agreement with Alps to return the money if no trades took place within seven days of depositing the $12M in the American National Bank account.

II. Discussion

A. Standard on a Motion for Summary Judgment

Summary judgment is proper when the "pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992).

B. Fraud

Alps and Seishin contend that West obtained the $12M by committing fraud. In order to prevail on a fraud claim in Illinois, a claimant must show: (1) a false statement of material fact;

(2) by one who knows or believes it to be false; (3) made with the intent to induce action by another in reliance on the statement; (4) action by the other in reliance on the truthfulness of the statement; and (5) injury to the other resulting from that reliance. *TRW Title Ins. Co.v. Security Union Title Ins. Co.*, 153 F.3d 822, 828 (7th Cir. 1998); *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 434 (7th Cir. 1996). In addition, the reliance on the misrepresentation must have been reasonable. *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 573 (7th Cir. 2001). Moreover, the party alleging the fraud bears the burden of proving intent to defraud by clear and convincing evidence. *Athey Prods.*, 89 F.3d at 434.

Here, it is undisputed that West falsely told Alps that a bond trading program existed to get it to transfer a large amount of money, told Yamada that he would hold the funds as a fiduciary when he in fact intended to withdraw money for his own purposes, told Yamada that Alps had earned $308,000 in profits from trades that had never taken place, and intended to give Alps $308,000 from its own account to cover up his misuse of the funds.

The court finds that West made knowingly false representations in what turned out to be a successful attempt to induce Alps to transfer funds into an account that he could control, that Alps relied on West's statements, and that Alps was injured. But, was Alps' reliance on what West told it reasonable? In the court's prior summary judgment opinion, it noted that reliance is normally a question of fact and can be determined as a matter of law when only one conclusion can be drawn from the evidence. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d at 574. The court also observed that to determine whether reliance was justified, the court must consider all of the facts that the plaintiff knew, as well as those facts that the plaintiff could have learned through the exercise of ordinary prudence. *Id.* Moreover, although the alleged victim

may not ignore a manifest danger, he is "not obliged to dig beneath apparently adequate assurances." *AMPAT/Midwest, Inc. v. Ill. Tool Works, Inc.*, 896 F.2d 1035, 1042 (7th Cir. 1990).

Here, West told Yamada about his 200% profit per month bond trading program. A reasonable person may well have thought that such a program, like the proverbial deal on land in Florida that turns out to be a swamp, was too good to be true. West also told Yamada that he would hold the money in a special fiduciary account which imposed strict obligations on him, including personal liability for misuse of the funds. The record presently before the court does not indicate whether Yamada, Alps, or Seishin conducted any investigation regarding the bond trading program or West prior to entrusting him with a very substantial sum of money.

The court flagged this issue in its prior opinion, noting that it was unclear exactly what investigation, if any, occurred. The court also observed that the parties had failed to provide the court with any evidence as to what would constitute "due diligence" or a reasonable investigation under the circumstances presented by this case. It thus concluded that it could not determine whether the reliance on West's statements was reasonable.

The motion for summary judgment presently before the court does not address any of these concerns. It is true that the motion is unopposed. However, as noted above, the party alleging the fraud bears the burden of proving intent to defraud by clear and convincing evidence. *Athey Prods.*, 89 F.3d at 434. Given the complete lack of evidence regarding the reasonableness of Yamada's actions on behalf of Alps/Seishin, the court cannot determine as a matter of law that his reliance was reasonable. Accordingly, Alps and Seishin are not entitled to summary judgment on their fraud cross-claim against West.

## C. Breach of Contract

All is not lost for Alps and Seishin, as they alternatively contend that West breached a contract with Yamada wherein West agreed to return the money to Alps's account at the Anglo-Irish Bank if trading did not commence within seven days of the transfer. To prevail on their breach of contract claim, Alps/Seishin must establish: (1) the existence of a valid contract (offer, acceptance, and consideration); (2) the plaintiffs' performance of their obligations under the contract; (3) the defendant's failure to perform his obligations under the contract; and (4) the existence of damages to the plaintiffs as a result of the breach. *Trustmark Life Ins. Co. v. University of Chicago Hospitals*, 207 F.3d 876, 882 (7th Cir. 2000); *Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1114-15 (7th Cir. 1992).

Here, the parties agreed in writing that West would return the money if trading did not commence within seven days of the transfer. In reliance on that statement, Alps put $12M into a purported fiduciary account controlled by West. It is undisputed that a trade did not occur within seven days, that West did not return the money after the seven day period had elapsed, and that Alps/Seishin have not been able to get all of the $12M back. Thus, the court finds that West breached a valid contract with Alps and Seishin. Alps and Seishin are, therefore, entitled to summary judgment on their breach of contract cross-claim against West in the amount of $1,207,934.01.

## III. Conclusion

For the above reasons, Alps and Seishin's motion for summary judgment as to its cross-claims against West is granted. Judgment is entered against West in the amount of $1,207,934.01 plus prejudgment interest.

DATE: FEB 2 0 2004

*Blanche M. Manning*
Blanche M. Manning
United States District Judge

99cv6990.sjWest